AO 106 (Rev. 01/09)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

Western District of Arkansas

FILED
WESTERN DIST ARKANSAS
U.S. DISTRICT COURT
DEC 19 2017
DOUGLAS F. YOUNG, Clerk
By _____
Deputy Clerk

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) |
| Information Associated With netspendinc.wu@gmail.com That Is Controlled By Google | ) ) ) |

Case No. 2:17-CM-31

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that there is now concealed on the following person or property located in the _____unknown_____ District of _____unknown_____ *(identify the person or describe property to be searched and give its location):* See "Attachment A-1"

This court has authority to issue this warrant under 18 U.S.C. §§ 2703(c)(1)(A) and 2711 (3)(A) and Federal Rule of Criminal Procedure 41

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized):* See "Attachment B-1"

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of ___18___ U.S.C. § __1343/1349__ , and the application is based on these facts: Wire Fraud and Conspiracy to Commit Wire Fraud

☑ Continued on the attached sheet.

☑ Delayed notice of ____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Michael Bernier, SA FRB-OIG
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __12/19/17__

_____
*Judge's signature*

City and state: __Fort Smith, Arkansas__

Mark E. Ford, US Magistrate Judge
*Printed name and title*

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

|  |  |
|---|---|
| **IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH netspendinc.wu@gmail.com THAT IS STORED AT PREMISES CONTROLLED BY GOOGLE** | **TO BE FILED UNDER SEAL**<br><br>**APPLICATION FOR SEARCH WARRANT**<br><br>Case No. _____ |

**AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT**

I, MICHAEL J. BERNIER, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

I make this affidavit in support of an application for a search warrant for information associated with certain accounts that is stored at premises controlled by Google, an email provider headquartered at 1600 Amphitheatre Parkway, Mountain View, CA 94043. The information to be searched is described in the following paragraphs and in Attachment A-1. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Google to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B-1. Upon receipt of the information described in Section I of Attachment B-1, government-authorized persons will review that information to locate the items described in Section II of Attachment B-1.

1.      I am a Special Agent with the Office of Inspector General for the Board of Governors of the Federal Reserve System and the Consumer Financial Protection Bureau (FRB-OIG). I am currently assigned to the Chicago Field Office where I investigate financial crimes among other offenses relating to the programs and operations of the Board of Governors of the Federal Reserve System. I have participated in investigations involving the execution of search warrants,  including the execution of search warrants on computers and other electronic media. As a result of my training and experience, I am familiar with the techniques and methods of operation used by individuals involved in criminal activity to conceal their activities from  detection by law enforcement authorities.

2.      I have personally participated in the investigation of the offenses discussed below. I am familiar with the facts and circumstances of this investigation from, among  other sources of information: (a) my personal participation in this investigation; (b) reports  made to me by other law enforcement agents; (c) review of documentary  evidence;  (d) information obtained from cooperating witnesses and other sources.

3.      Excerpts  of  documents,  emails,  and  other  conversations  and correspondence,  when referred to herein, are drawn from summaries and may be drawn from draft translations  that are subject to revision. Where statements of others are set forth, except as otherwise  noted, they are set forth in substance and in part.

4.      Because this affidavit is submitted for the limited purpose of establishing probable cause for a search warrant, I have not set forth each and every fact learned during the course of the investigation.

5.      Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that there is located within (1) INFORMATION ASSOCIATED WITH netspendinc.wu@gmail.com THAT IS STORED AT PREMISES CONTROLLED BY GOOGLE, further described in Attachment A-1 ("SUBJECT EMAIL ACCOUNT"), the things described in Attachment B-1, respectively, which constitute fruits, evidence and  instrumentalities of: wire fraud, in violation of Title 18, United States Code, Section 1343;  and conspiracy to commit wire fraud, in violation of Title 18, United States Code, Section 1349 (together, the  "SUBJECT OFFENSES").

## JURISDICTION

6.      This Court has jurisdiction to issue the requested warrant because it is "a court  of competent jurisdiction" as defined by 18 U.S.C. § 2711. ( 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A)).  Specifically, the Court is "a district court of the United States . . . that – has  jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## BACKGROUND AND RELEVANT FACTS

7.      The FRB-OIG is investigating possible violations of federal criminal laws, including conspiracy to commit and wire fraud and bank fraud, in violation of 18 U.S.C. §§ 1343 and 1349, committed by, among others, LARRY J. SHULTZ, a resident of Lansing, Michigan, PERNEASE H. AUSTIN, a resident of Hallandale Beach, FL and an UNKNOWN Subject using the name "JON NELSON."

**A.    The Inheritance Scam**

8.      Based on emails and documents obtained during the course of this  investigation, I have learned that the VICTIM, a resident of Van Buren, Arkansas, was contacted via email

starting in or around November, 2012, by an individual calling himself, "Dr. FRANK LEE," (LEE) who informed the VICTIM that a distant relative of the VICTIM'S had passed away in Nigeria and left the VICTIM $10.5 Million United States Dollars (USD).   LEE emailed the VICTIM various documents and certificates purporting to be from among others, the Central Bank of Nigeria, the Nigerian Federal Ministry of Finance, the Nigerian Federal Ministry of Justice, the Nigerian Federal High Court of Justice all of which gave the appearance of supporting LEE's claim that the VICTIM had $10.5 million USD waiting to be transferred to the VICTIM, once he paid the processing and transfer fees.  The VICTIM stated he paid a fee to initiate the transfer of money to the United States, but he does not recall the exact amount and has since lost records of that transaction.  Email records show the VICTIM was then contacted by PATRICK EDWARD (EDWARD) on December 6, 2012, who represented himself as an employee of the Federal Reserve Bank of New York and was using the email patrickedward@fedresvbnk.org.   EDWARD told the VICTIM the $10.5 million USD had indeed been transferred to the United States, but was being placed on a "stop order" from the United States Department of Homeland Security (DHS).  A search of the Federal Reserve directory does not show any employees with the name PATRICK EDWARD and the email address given was not authentic since email from the NY Federal Reserve end in "@ny.frb.org" not "@fedresvbnk.org".  The VICTIM was then told by both LEE and EDWARD that to get the funds released from the DHS "Stop Order" he had to get clearance certificates from Nigeria. The VICTIM did not have money he could use for this.

    9.    Records obtained during the course of this investigation reveal LEE continued to contact the VICTIM throughout 2013, attaching various documents to the emails in an

attempt to prove the legitimacy of his story.  LEE sent the VICTIM his Certificate of Water

Baptism, a Certificate of Marriage, an Identity Card from "Frank Lee & Associates," a

Certificate of Call to Bar, and a copy of a Nigerian Passport, all bearing LEE's name.  LEE

also sent a Certification of Live Birth from Honolulu, Hawaii with the same last name as the

VICTIM's.

10.     Records obtained during the course of this investigation reflect that LEE

continued to contact the VICTIM in 2015 and 2016 and finally said he would help the

VICTIM pay the fee to release the funds, but he needed the VICTIM to send additional funds

for the remaining balance.  LEE emailed the VICTIM a document purporting to be a

handwritten receipt from the Federal Reserve Bank of New York as proof that he paid a

portion of the fee.

11.     Records obtained during the course of this investigation reflect that EDWARD

also contacted the VICTIM via email in 2013 and told him that following the DHS "Stop

Order" additional "stop orders" were placed on the funds from the Nigerian Federal Board of

Inland Revenue and the High Court of Justice in London, United Kingdom.  EDWARD

continued to falsely identify himself as an employee of the Federal Reserve in these emails.

12.     Records obtained during the course of this investigation reflect that on or about

February 16, 2017 the VICTIM was contacted by LEE and told the funds had finally

transferred.  LEE emailed a fraudulent document bearing a Federal Reserve logo showing the

VICTIM had $10.5 million USD in his name.   The VICTIM was told he just had to pay a

$1,500 fee to have the funds released, the $10.5 million USD were to be placed on a Western

Union NetSpend Prepaid MasterCard five days after the fee was paid.

**B.    "Jon Nelson"**

13.    On or about July 19, 2017 the VICTIM received an email from an individual identifying himself as JON NELSON (NELSON), who was using the email netspendinc.wu@gmail.com.  NELSON told the VICTIM he was having a Western Union NetSpend Prepaid MasterCard sent to him and when he received it to call NELSON, not the customer service line to activate the card.  NELSON went on to tell the VICTIM he was working with the Federal Reserve and others to get the funds to the VICTIM, once he paid the final fee.  NELSON's email signature identified him as the "Director of Corporate Communication, NetSpend Western Union Corp USA"

14.    Records obtained during the course of this investigation reflect that in or around July 2017 the VICTIM was sent a Western Union NetSpend Prepaid MasterCard though United States Mail.  The VICTIM did not request or open the account on his own accord.

15.    Records obtained during the course of this investigation reflect that on or about July 24, 2017, NELSON sent the VICTIM an email instructing the VICTIM to pay $1,500 as a payment processing fee.  NELSON attached an image of what appeared to be a Western Union NetSpend Prepaid MasterCard Employee ID in an attempt to establish his bona fides.  The VICTIM explained to NELSON he was a veteran on a fixed income and did not have the money to pay at that time.

16.    Records obtained during the course of this investigation reflect that on or about July 25, 2017, NELSON emailed the VICTIM "Ok being a veteran, we have resolved to give you up to 30 days before penalty will be incurred, you have it your way this time."

17.    Records obtained during the course of this investigation reflect that on or about

August 3, 2017, the VICTIM had relayed to NELSON he had raised $1,000 USD and it was "every clear cent from his check." In the following days the VICTIM asked for the "contact info, ID, phone number" of the individual he was supposed to send funds too so he could file a police report if he were scammed.

18.     Records obtained during the course of this investigation reflect that NELSON sent the VICTIM an email on or about August 14, 2017, instructing the VICTIM to send the payment, via Walmart to Walmart, to PERNEASE HILTON AUSTIN in Hollandale Beach, Florida. NELSON attached an alleged copy of a United States Passport bearing the name PEARNESE HILTON AUSTIN with an image of an older Caucasian male. [Agent Note: During the course of the investigation I discovered the individual whose photo appears on the U.S. Passport is actually DANIEL MILTON BRYANT, who passed away on March 21, 2017. The real PERNEASE AUSTIN HILTON is an African American, female.]

19.     The VICTIM communicated through text message to NELSON that he had concerns about sending money to an elderly gentleman whose involvement was unknown in the transaction when he had no address for the man.

20.     Records obtained during the course of this investigation reflect that on or about August 15, 2017, NELSON advised the VICTIM, via email, he could send the money to LARRY SHULTZ instead. NELSON attached an alleged copy of Michigan Driver's License to the email showing the name LARRY SHULTZ. [Agent Note: During the course of the investigation I discovered the individual whose photo appears on the driver's license is actually BURTON ZIPSTER. The real LARRY SHULTZ has a different driver's license.]

21.     On or about August 16, 2017, the VICTIM sent a Walmart to Walmart

payment from Van Buren, Arkansas to LARRY SHULTZ in the amount of $1,500 USD and paid $16 USD in transfer fees. The VICTIM notified NELSON via text message the payment was made and NELSON told the VICTIM he would have his funds in five working days.

22.   On or about August 16, 2017, SHULTZ entered a Walmart in Lansing, Michigan and collected $1,500 USD that was sent from the VICTIM. The transaction was captured on security footage.

**C.   The Federal Reserve System & Janet Yellen**

23.   Records obtained during the course of this investigation reflect that on or about August 22, 2017, the VICTIM received an email claiming to be from JANET YELLEN, Chair of the Federal Reserve. The email came from the email address fed@mail2janet.com and was on what the VICTIM believed to be official letterhead from the Federal Reserve. The letter was addressed to the VICTIM and acknowledged his $1,500 payment, but demanded another $880 USD from the VICTIM to pay the cost of "Sort Code" and other fees. [Agent Note: The email address "mail2janet.com is not authentic, the actual email from the FRB in this case would end in "frb.gov."]

24.   After receiving the August 22, 2017 email claiming to be from YELLEN the VICTIM contacted NELSON via text message expressing his displeasure, telling NELSON he does not even have any food in his house after paying SHULTZ. The VICTIM told NELSON he was going to contact the authorities to file charges, NELSON replied, "OK. Am waiting."

25.   On or about September 28, 2017, NELSON informed the VICTIM, via text message his funds would be repatriated to Africa since he failed to make the final payment.

26.    On October 27, 2017, the VICTIM placed a consensual monitored phone call to NELSON, in the presence of investigating agents.  The VICTIM claimed to have a way to raise the funds and ask if it was too late to pay.  NELSON told the VICTIM he could still pay and he would send him the payment instructions via email.

27.    On October 27, 2017, NELSON sent the VICTIM an email, still using the netspendinc.wu@gmail.com address, telling the VICTIM to send $880 USD to AUSTIN in Hallandale Beach, FL.

## PROBABLE CAUSE TO SEARCH THE SUBJECT EMAIL ACCOUNT

28.    During the course of this investigation, NELSON communicated with the VICTIM, by among other means, the SUBJECT EMAIL ACCOUNT, in connection with and regarding the Inheritance Scam described above.

29.    For instance, at approximately 07:59 on July 19, 2017, NELSON sent the VICTIM an email, "YOUR NETSPEND WESTERN UNION MASTERCARD HAS BEEN DISPATCHED TO YOUR ADDRESS."  In it NELSON fraudulently identifies himself as an employee of NetSpend-Western Union Corp USA, which are actually two separate entities.

30.    At approximately 20:26 on July 24, 2017, NELSON sent the VICTIM an email, "COMPREHENSIVE CARD AND BANK ACCOUNT ACTIVATION ADVISE." In it NELSON fraudulently represents an agreement with the Federal Reserve, NetSpend, Western Union, MetaBank (of South Dakota) and the Central Bank of Africa.   NELSON also attaches a fraudulent NetSpend Western Union Identification card, a fraudulent Federal Reserve/MetaBank "Telex Report" and a fraudulent MetaBank Screenshot showing $10.5 million USD in the account with the VICTIM's name.

31.    At approximately 21:16 on August 14, 2017, NELSON sends the VICTIM wire payment instructions as well as an image of a fraudulent United States Passport bearing the photo of a deceased United States Citizen.

32.    At approximately 00:08 on August 15, 2017, NELSON sends the VICTIM wire payment instruction as well as an image of a fraudulent Michigan Driver's License.

33.    At approximately 11:41 on October 19, 2017, NELSON sends the VICTIM

wire payment instructions supposedly so the VICTIM could pay a fraudulent fee to the Federal Reserve per the request of JANET YELLEN.

34.    In light of the foregoing, there is probable cause to search the SUBJECT EMAIL ACCOUNT for, among other things, communications, records, documents,  meeting schedules, and other evidence relating to the Inheritance Scam described above. On October 24, 2017, preservation requests pursuant to  18 U.S.C. 2703(f) were submitted to Google regarding the SUBJECT EMAIL ACCOUNTS.  In general, an email that is sent to a Google subscriber is stored in the  subscriber's "mail box" on Google servers until the subscriber deletes the email.  If the subscriber does not delete the message, the message can remain on Google server indefinitely, even if the subscriber deletes the email, it may continue to be available on  Google's servers for a certain period of time.

## BACKGROUND CONCERNING EMAIL

35.     Based on my training and experience, I have learned that Google provides a variety of on-line services, including electronic mail ("email") access, to the public.  Google allows subscribers to obtain email accounts at the domain name google.com, like the email accounts listed in Attachment A-1.  Subscribers obtain an account by registering with Google. During the registration process, Google asks subscribers to provide basic personal information. Therefore, the computers of Google are likely to contain stored electronic communications (including retrieved and unretrieved email for Google subscribers) and information concerning subscribers and their use of Google services, such as account access information, email transaction information, and account application information.  Based on my training and experience, I know such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

36.     A Google subscriber can also store with the provider files in addition to emails, such as address books, contact or buddy lists, calendar data, pictures (other than ones attached to emails), and other files, on servers maintained and/or owned by Google.  In my training and experience, evidence of who was using an email account may be found in address books, contact or buddy lists, email in the account, and attachments to emails, including pictures and files.

37.     Based on my training and experience, I know email providers generally ask their subscribers to provide certain personal identifying information when registering for an email account.

38.     Such information can include the subscriber's full name, physical address, telephone numbers  and other identifiers, alternative email addresses, and, for paying subscribers, means and source of payment (including any credit or bank account number). Based on my training and  experience, I know such information may constitute evidence of the crimes under investigation  because the information can be used to identify the account's user or users.  Based on my  training and experience, I know that even if subscribers insert false information to conceal their identity, this information often provides clues to their identity, location or illicit activities.

39.     Based on my training and experience, I know email providers typically retain certain  transactional information about the creation and use of each account on their systems. This  information can include the date on which the account was created, the length of service, records of log-in (i.e., session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via the provider's website), and other log files that reflect usage of the account.  In addition, email providers often have  records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with particular logins to the account.  Because every device that  connects to the Internet must use an IP address, IP address information can help to identify  which computers or other devices were used to access the email account.

40.     Based on my training and experience, I know in some cases, email account users will  communicate directly with an email service provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users.  Email providers

typically retain records about such communications, including records of contacts between the user and the provider's support services, as well records of any actions taken by  the provider or user as a result of the communications.  Based on my training and experience, I know such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

41.     As explained herein, information stored in connection with an email account may provide crucial evidence of the "who, what, why, when, where, and how" of the  criminal conduct under investigation, thus enabling investigators to establish and prove each  element or alternatively, to exclude the innocent from further suspicion.  B a s e d   o n   my training and experience, the information stored in connection with an email account can indicate who has used or controlled the account.  This "user attribution" evidence is analogous to the search  for "indicia of occupancy" while executing a search warrant at a residence.  For example, email communications, contacts lists, and images sent (and the data associated with the foregoing, such as date and time) may indicate who used or controlled the account at a relevant time. Further, information maintained by the email provider can show how and   when the account was accessed or used.  For example, as described below, email providers typically log the Internet Protocol (IP) addresses from which users access the email account  along with the time and date.  By determining the physical location associated with the  logged IP addresses, investigators can understand the chronological and geographic context   of the email account access and use relating to the crime under investigation. This geographic and timeline information may tend to either inculpate or exculpate the account owner.  Additionally, information stored at the user's account may further indicate the geographic location of the

account user at a particular time (e.g., location information integrated into an image or video sent via email). Last, stored electronic data may provide relevant insight into the email account owner's state of mind as it relates to the offense under investigation. For example, information in the email account may indicate the owner's motive and intent to commit a crime (e.g., communications relating to the crime), or consciousness of guilt (e.g., deleting communications in an effort to conceal them from law enforcement).

## CONCLUSION

42.     Based on the forgoing, I request that the Court issue the proposed search warrant. Because the warrant will be served on Google who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

## REQUEST FOR SEALING

43.     I further request that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the application and search warrant. I believe that sealing these documents is necessary because the items and information to be seized are relevant to an ongoing investigation into the enterprise, and not all of the subjects and targets of this investigation are aware that they are under investigation. Based upon my training and experience, I have learned that criminals actively search for criminal affidavits and search warrants via the Internet, and disseminate them to other criminals as they deem appropriate, e.g., by posting them publicly through online forums. Premature disclosure of the contents of this affidavit and related documents may have a significant and negative impact on the continuing investigation and may severely jeopardize its effectiveness, including by allowing

charged and uncharged co-conspirators to flee,   tamper with witnesses, destroy evidence or

otherwise obstruct the ongoing investigation.

44.     I further request, pursuant to 18 U.S.C. § 2705(b), that the Court issue an Order

commanding Google not to notify any person (including the subscribers or customers  of the

account listed in the attached warrant) of the existence of the attached warrant until   further

order of the Court.  Google is a provider of an electronic communication service, as  defined in

18 U.S.C. § 2510(15), and/or a remote computer service, as defined in 18 U.S.C. §   2711(2).

This Court has authority under 18 U.S.C. § 2705(b) to issue "an order commanding  a provider

of electronic communications service or remote computing service to whom a  warrant,

subpoena, or court order is directed, for such period as the court deems appropriate,   not to

notify any other person of the existence of the warrant, subpoena, or court order."  In  this case,

such an order would be appropriate because the requested warrant relates to an   ongoing

criminal investigation that is not known to all of the targets of the investigation and  the scope

of which is not known to the charged defendants, and there is reason to believe that  its

disclosure will alert the defendants and targets to the ongoing investigation.  Accordingly,  there

is reason to believe that notification of the existence of the warrant will seriously  jeopardize

the investigation, including by giving targets an opportunity to flee, destroy or  tamper with

evidence, change patterns of behavior, and seek to influence potential witnesses.  See 18 U.S.C.

§ 2705(b).  Some of the evidence in this investigation is stored electronically and can be

completely and permanently erased.  Some of the evidence in this investigation   involves

communications that can be transferred to alternate platforms (including encrypted platforms

and platforms beyond the jurisdictional reach of U.S. legal process).  If alerted to  the existence

of the warrant, there is reason to believe that the data and information sought may be altered or destroyed. Accordingly, it is requested that the Court grant the proposed Order directing Google not to disclose the existence or content of the warrant, except that Google may disclose the warrant to an attorney for Google for the purpose of receiving legal advice.

Respectfully submitted,

MICHAEL J. BERNIER
Special Agent #1 0 7
FRB-OIG

Subscribed and sworn to before me on ___*December 19*___, 201**7**

HONORABLE MARK E. FORD
UNITED STATES MAGISTRATE JUDGE
WESTERN DISTRICT OF ARKANSAS

## ATTACHMENT A-1

### Property to Be Searched

This warrant applies to information associated with the SUBJECT EMAIL ACCOUNT: netspendinc.wu@gmail.com from July 23, 2017 to the present  that is stored at premises controlled by Google, a company that accepts  service of legal process at 1600 Amphitheatre Parkway, Mountain View, CA 94043.

## ATTACHMENT B-1

### Particular Things to be Seized

**I.    Information to be disclosed by Google (the "Provider")**

To the extent that the information described in Attachment A-1 is within the possession, custody, or control of the Provider, including any emails, records, files, logs, or information that has been deleted but is still available to the Provider, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f) on October 24, 2017, the Provider is required to disclose the following information to the government for each account or identifier listed in Attachment A-1:

a.    The contents of all emails associated with the account, including stored or preserved copies of emails sent to and from the account, draft emails, the source and destination addresses associated with each email, the date and time at which each email was sent, and the size and length of each email;

b.    All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative email addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

c.    The types of service utilized;

d.    All records or other information stored at any time by an individual using the account, including address books, contact and buddy lists, calendar data, pictures, and files;

e.      All records pertaining to communications between the Provider and any person regarding the account, including contacts with support services and records of actions taken.

**II.     Information to be seized by the government**

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of Title 18, United States Code, Section 1343 (wire fraud); Title 18, United States Code, Section 1349 (conspiracy to commit wire fraud) (the "SUBJECT OFFENSES"), occurring  after July 23, 2017, including, for the account or identifier listed in Attachment A-1,  information pertaining to the following matters:

(a) Communications and records relating to JON NELSON, NetSpend, Western Union, MetaBank, the Federal Reserve, Walmart, LARRY SHULTZ or PERNEASE AUSTIN.

(b) Any and all payments made by, instructed to be made by, or related to JON NELSON, LARRY SHULTZ, PERNEASE AUSTIN

(c) The use and disposition of funds obtained by representing himself as an official with NetSpend, MetaBank, the Federal Reserve, Western Union or Walmart (RIA payments);

(d) Evidence indicating how and when the email account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the SUBJECT OFFENSES and to the email account owner;

(e) Evidence indicating the email account owner's state of mind as it relates to the SUBJECT OFFENSES; and

(f)  The identity of the person(s) who created or used the user ID, including

records that help reveal the whereabouts of such person(s).